```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE       *  MDL Docket No. 2004
                                   4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS   *
                                   Case Nos.
LIABILITY LITIGATION            *  4:13-cv-27 (Watson)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Melissa Robinson Watson was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Watson brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Watson also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on Watson's claims, contending that they are time-barred. For the reasons set forth below, Mentor's summary judgment motion (ECF No. 47 in 4:13-cv-27) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Plaintiff Melissa Robinson Watson sought treatment for stress urinary incontinence from Dr. Bruce Green. Dr. Green implanted Watson with ObTape on May 17, 2004. In late June 2004, Watson returned to see Dr. Green, complaining of vaginal discharge. Dr. Green examined Watson, found an erosion of the ObTape, and told Watson that a small piece of ObTape was "sticking out." Watson Dep. 96:8-14, ECF No. 47-4 in 4:13-cv-27. Dr. Green recommended surgery to remove the eroded portion of Watson's ObTape. Watson understood that the erosion likely caused her discharge symptoms, and she understood that Dr. Green planned to "clip" the exposed piece of mesh. *Id.* at 97:7-24. Dr. Green did note that Watson's diabetes was a factor that may have slowed her healing process. Dr. Green removed the eroded

portion of Watson's ObTape in July 2004.  Her wound healed, and her bleeding and discharge stopped.

In January 2005, Watson returned to Dr. Green complaining of recurrent incontinence and vaginal discharge.  Dr. Green suggested another sling procedure.  At that time, Watson understood that her sling had "come apart" and come through her vaginal wall, and she understood that it was not working.  *Id.* at 178:22-179:23.  On January 17, 2005, Dr. Green removed some of Watson's remaining ObTape and implanted her with a different sling.  Dr. Green told Watson that he had to take out some of the ObTape.

Watson is Georgia resident whose ObTape-related treatment took place in Georgia.  On January 9, 2013, Watson served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  She brought claims for strict liability and negligence.

DISCUSSION

Watson filed her action in Minnesota state court, and Mentor removed the action to the United States District Court for the District of Minnesota.  The case was later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape.  The parties agree for purposes of summary judgment that Minnesota law applies to Plaintiffs' claims.  *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab.*

3

*Litig.*, No. 4:08-md-2004, 2013 WL 286276, at *7 (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

Mentor contends that Plaintiffs' claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). The statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05 subd. 1(5) (establishing six-year limitation period for personal injury claims not arising in contract or strict liability). Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law).

"A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop

4

from the same cause." *Id.* For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, Watson contends that she did not learn of a connection between ObTape and her injuries until she saw a television commercial regarding mesh complications during 2012. But Watson knew that she suffered some injuries caused by ObTape well before then. By July 2004, Watson knew that her ObTape had eroded and was causing vaginal discharge. Although Watson may have believed that her diabetes hindered the healing process following her implant surgery, she cannot seriously dispute that she knew there was a complication with her ObTape. And by January 2005—after her wound healed—Watson continued to have problems with ObTape. She believed that her ObTape was not working, and she knew that her doctor recommended removing it and replacing it with a different sling. Therefore, Watson knew by January 2005 that there was a likely connection between

5

ObTape and some of her injuries. She did not file her complaint until approximately eight years later, in January 2013.

Watson contends that it is not enough that she made a connection between ObTape and some of their injuries. Rather, she appears to argue that she must have been on notice that a *defect* in ObTape caused her injuries. Watson did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a product *defect.* Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product. *Klempka*, 963 F.2d at 170.

Watson nonetheless contends that two Eighth Circuit cases and one Minnesota District Court case support denial of summary judgment. The Court disagrees. First, Watson points to *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), where the plaintiffs alleged that they suffered lung damage due to their exposure to a toxic chemical at their workplace. But there, unlike here, the plaintiffs' doctors initially told the plaintiffs that there was no correlation between their symptoms and the chemical. *Id.* at 399. The Eighth Circuit thus concluded that the plaintiffs' claims did not accrue until the cause of the plaintiffs' injuries was rationally identified. Second, Watson points to *Tuttle v. Lorillard Tobacco Co.*, 377

6

F.3d 917 (8th Cir. 2004). In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek. The Eighth Circuit reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco. *Id.* at 922.  Third, Watson points to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013). In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage.  The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection.  The district court noted that the "first article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007.  *Id.*

*Hildebrandt, Tuttle,* and *Huggins* are all distinguishable from Watson's case.  In *Hildebrandt, Tuttle,* and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else, and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury.  In contrast, here, Watson suffered injuries that were connected to an erosion

7

of the ObTape, and Watson knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time her doctor excised the ObTape and replaced it with another product.

Watson appears to argue that even if Minnesota's discovery rule does not save her strict liability claims, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence."  *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988); *accord Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence."  *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, Watson knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure.  A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other

8

problem.  But Watson pointed to no evidence that she took any action to investigate her potential claims even though she knew (or had enough information to know) there was a connection between her injuries and the ObTape.  Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations.

In summary, Watson did not file her complaint within six years after her claims accrued.  Her claims are therefore time-barred.

CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 47 in 4:13-cv-27) is granted.

IT IS SO ORDERED, this 19th day of April, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA